UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

ANTIONETTE C. TAYLOR                                                              Plaintiff

v.                                                              Civil Action No. 3:25-cv-583-RGJ

FAMILY HEALTH CENTERS, INC.,                                                    Defendants
ET AL.

* * * * *

**MEMORANDUM OPINION & ORDER**

*Pro se* Plaintiff Antionette C. Taylor ("Taylor") filed an amended complaint [DE 26] asserting employment discrimination claims against eleven Defendants: Family Health Centers, Inc. ("FHC"); FHC employees Samantha Davis ("Davis"), Patricia Fulkerson ("Fulkerson"), Margretta Egbert ("Egbert"), Jennifer Green ("Green"), and Cynthia Cox ("Cox") (collectively, "FHC employees"); CHC Alliance LLC ("CHC") and CHC CEO Meric Cavanaugh ("Cavanaugh") (collectively, "CHC Defendants"); Louisville Metro Department of Public Health and Wellness ("DPHW"); Louisville Metro Civil Service Board ("CSB"); and Louisville Metro Board of Health (the "Board of Health"). The FHC employees, CHC Defendants, DPHW, and Board of Health each moved to dismiss under Fed. R. Civ. P. 12(b)(6).[1] [DE 32; DE 33; DE 40; DE 41]. Taylor responded to the motions to dismiss, [DE 46], and the FHC employees replied. [DE 49]. Taylor also moves for leave to file a second amended complaint under Fed R. Civ. P. 15(a)(2). [DE 45]. FHC, the FHC employees, CHC Defendants, DPHW, and Board of Health, filed responses to Taylor's motion to file a second amended complaint, [DE 47; DE 51; DE 52], and Taylor replied [DE 48; DE 53; DE 54]. Also before the Court is Taylor's motion for leave to file a sur-reply to the FHC employees' reply in support of their motion to dismiss [DE 50], Taylor's

---

[1] Defendants FHC and CSB filed answers to the amended complaint. [DE 31; DE 37].

1

motion for an exemption from the PACER user fee [DE 24], and Taylor's motion to seal her motion for an exemption [DE 23].

For the reasons below, the Court **DENIES** Taylor's motion for leave to file a second amended complaint [DE 45]; **DENIES** Taylor's motion for leave to file a sur-reply [DE 50]; **GRANTS** DPHW's motion to dismiss [DE 32]; **GRANTS** the CHC Defendants' motion to dismiss [DE 33]; **DENIES** the Board of Health's motion to dismiss [DE 40]; **GRANTS IN PART** and **DENIES IN PART** the FHC employees' motion to dismiss [DE 41]; **DENIES** Taylor's motion to seal [DE 23]; and **DENIES WITHOUT PREJUDICE** Taylor's motion for an exemption from the PACER fee. [DE 24].

## I.   BACKGROUND

This action arises out of Taylor's former employment with FHC, where she served as a licensed behavioral health professional from October 2024 until her termination in March 2025. [DE 26 at 367]. Taylor filed her original complaint in this Court on September 10, 2025, alleging various age- and race-related employment discrimination claims arising from her employment with FHC. [DE 1]. Several Defendants moved to dismiss the complaint [DE 6; DE 7; DE 9], and Taylor moved to amend the complaint to cure the deficiencies identified in the motions to dismiss. [DE 17]. The Court granted Taylor's unopposed motion to amend and denied as moot Defendants' motions to dismiss. [DE 25]. In granting Taylor's motion to amend, the Court declined to engage in the futility analysis typically required under Rule 15 and explained that because "Taylor's amended complaint attempts to correct the deficiencies in her original complaint, it would be more appropriate for the Court to allow the parties to submit renewed briefing on the amended complaint than to decide the merits of the amended complaint at this stage, without any input from Defendants." [*Id.* at 348.]

2

Taylor's amended complaint alleges that FHC discriminated against her throughout the course of her employment based on her race and age and retaliated against her for making complaints through unwarranted disciplinary measures and, ultimately, termination. [DE 26 at 364–66]. She asserts numerous causes of action against multiple Defendants without specifying which claims apply to which parties. She alleges: (1) racial discrimination in violation of Title VII of the Civil Rights Act, the Age Discrimination in Employment Act ("ADEA"), the Kentucky Civil Rights Act ("KCRA"), 42 U.S.C. § 1983, and the First Amendment (Count I);[2] (2) age discrimination in violation of the ADEA, the KCRA, and the First Amendment (Count II); (3) wrongful discharge based on Taylor's race and age in violation of Title VII, the ADEA, § 1983, and the KCRA (Count III); (4) civil conspiracy in violation of Title VII, the ADEA, § 1983, and the KCRA (Count IV); (5) Intentional Infliction of Emotional Distress ("IIED") (Count V); (6) vicarious liability/*respondeat superior* against the Board of Health, CSB, and FHC for the actions of their employees (Count VI); (7) breach of the covenant of good faith and fair dealing (Count VII); (8) workplace harassment in violation of Title VII, the ADEA, and the KCRA (Count VIII); (9) retaliation for whistleblowing pursuant (Count IX); (10) breach of contract (Count X); (11) declaratory and injunctive relief (Count XI). [*Id.* at 367–97].

Though Taylor's allegations lack clarity—particularly with respect to which claims are asserted against which Defendants—the Court understands them as follows. Under Count I, Taylor alleges that all Defendants "suspended and terminated" Taylor, an African American woman over the age of 40, denying her "the same terms and conditions as those afforded to her similarly situated

---

[2] Although unclear, the amended complaint states "Defendants' actions were willfully and intentionally in violation of in violation of the Title VII of the Civil Rights Act of 1964, as amended, and Title I, § 102 of the Civil Rights Act of 1991, Title 42 of the United States Code §§1983 (individual liability - Civil action for deprivation of Taylor's rights), 1981a(b)3 and 2000e-5(f)(l) and (3) et seq., the Age Discrimination in Employment Act of 1967, as amended, the Kentucky Civil Rights Act of 1966, as amended, Kentucky Revised Statutes Chapter 344.00, First Amendment to the U.S. Constitution." [DE 26 at 368].

non-African American employees." [*Id.* at 367]. Under Count II, she alleges that all Defendants suspended and terminated her based on her age—61 years old—treating her differently from other similarly situated younger employees. [*Id.* at 368–69].

As to Count III for wrongful discharge, Taylor alleges that she reported racial discrimination and other violations to FHC's human resources officer, Julie Meiman ("Meiman"), who attempted to cover up the infractions. [*Id.* at 369]. She also reported instances of "false reporting in patients' electronic health records" to Defendant Fulkerson, who "became aggressive, punitive and hostile" toward Taylor and attempted to cover up the allegations. [*Id.* at 370]. She reported "patients' abuse" to FHC CEO Bart Irwin ("Irwin") and Defendant Davis, who thereafter "caused Taylor to suffer professional reputation damage." [*Id.*]. She also maintains that Davis "insisted that Taylor should have kept her mouth shut[.]" [*Id.*]. Count III references Defendants Davis, Fulkerson, and FHC, so the Court interprets this cause of actions as being asserted against only those Defendants.

Taylor alleges civil conspiracy (Count IV) against the FHC employees, CHC, and Cavanaugh. [*Id.* at 371]. She maintains that those Defendants conspired to discriminate against her, inducing a breach of Taylor's contracts with FHC, CHC, and "insurance payors[.]" [*Id.* at 371]. As part of the conspiracy, she maintains that the FHC employees, CHC, and Cavanaugh made "false reports in Taylor's patients' eClinical Works electronic health records" and shared Taylor's confidential counseling notes. [*Id.*]. They also "cancel[ed] Taylor's patient appointments, misus[ed] Taylor's provider numbers, . . . overcharge[ed] Taylor's patients . . . , allow[ed] unlicensed employees to supervise Taylor," and submitted false reports regarding opioid settlement payouts. [*Id.* at 371–72]. Finally, she maintains that these Defendants played a prank

on her, causing her to miss work. [*Id.* at 372]. As a result of the conspiracy, she maintains that she was terminated without "oral or written notice." [*Id.* at 374].

Count V asserts IIED against the FHC employees and CHC. Taylor alleges that the FHC employees pranked her by failing to correct her belief that she was required to report to work on the day of a snowstorm, causing her emotional distress. [*Id.* at 376]. Taylor states that although FHC sent out email announcing that all FHC locations would open two hours late on the day of the snowstorm, she did not see the message because she "did not have remote access to her work emails." [*Id.*] As a result, she commuted to work in the snow at her normal time and could not enter the building. [*Id.* at 377]. She also alleges that, on one occasion, Egbert and Fulkerson stalked Taylor during the workday and that Egbert and "threatened and intimidated" Taylor. [*Id.* at 512]. Taylor maintains that her termination from FHC and the discrimination she suffered constitute outrageous conduct for purposes of IIED. [*Id.* at 378–79]. Finally, she alleges that a CHC employee emailed Taylor threatening her job, telling her that her Medicare application was denied, and advising her that she failed to meet employment requirements. [*Id.* at 379]. Taylor alleges that this same CHC employee spread unspecified false rumors about her. [*Id.*].

Under Count VI, Taylor alleges that the Board of Health and CSB are vicariously liable for the actions of FHC. [*Id.* at 381]. She argues that the Board of Health and CSB are in a principal-agent relationship with FHC, and therefore that they are liable for FHC employee misconduct, even if the Board of Health and CSB were not directly negligent. [*Id.* at 383–83].

Count VII alleges breach of the covenant of good faith and fair dealing against FHC, the FHC employees and CHC. [*Id.* at 383–84]. Taylor maintains that she had an employment contract with FHC to serve as a behavioral health professional, as well as an "implied agreement . . . of good faith and fair dealing[.]." [*Id.* at 384]. Taylor also alleges that she and CHC entered into an

5

"implied contract," under which CHC was to serve as Taylor's certified provider credentialing specialist and manage Taylor's credentialing process; maintain access to Taylor's national provider identifier, records, passwords, and email; maintain Taylor's database and ensure compliance; and communicate with insurance companies for Taylor. [*Id.* at 384]. She asserts that the FHC employees and CHC breached these contracts by discriminating against Taylor; conspiring to cause her injury; retaliating after she made complaints of potential harm to patients; terminating her employment; accessing her confidential treatment notes; making false statements in her patient's electronic health records; and failing to follow company policy and Kentucky mandatory reporting laws. [*Id.* at 385–86].

Under Count VIII for workplace harassment, Taylor alleges that she was subjected to an "intimidating, hostile, and offensive work environment," [*Id.* at 389]. Though she fails to name specific Defendants, she states that her "non-African American co-workers began to treat her coldly, [and] made disparaging comments in [her] patients' electronic health records about her job performance[.]" *Id.* at 389–90]. The amended complaint suggests that this claim is asserted against the FHC employees and FHC.

Under Count IX, Taylor alleges that FHC, the FHC employees, CHC, and Cavanaugh retaliated against her for whistleblowing. [*Id.* at 390]. She maintains that she reported discrimination, harassment, false reporting in patient's electronic health records, and violations of patients' rights to privacy, after which her boss denied her training opportunities, required her to complete a performance evaluation, and ultimately suspended and terminated her. [*Id.* at 391].

Count X alleges breach of contract against FHC and CHC. [*Id.* at 392]. She alleges that she entered into an implied contract with CHC whereby CHC was required to serve as Taylor's certified provider credentialing specialist and manage Taylor's credentialing process; maintain

6

access to Taylor's national provider identifier, records, passwords, and email; maintain Taylor's database and ensure compliance; and communicate with insurance companies for Taylor. [*Id.* at 392–93]. She also alleges that FHC and CHC received payments for behavioral services rendered under Taylor's credentials, and that they breached their purported contract because they "failed to perform their part of the employment contract and refused to provide [Taylor] copies of her patients' explanation of payments in which belonged to Taylor." [*Id.* at 393]. Furthermore, "CHC continued to access Taylor's numbers and information during" FHC's 21-day suspension of Taylor. [*Id.* at 393–94].

Finally, Count XI seeks declaratory and injunctive relief from only DPHW. [*Id.* at 394]. She alleges that Davis, an FHC employee, submitted fraudulent status reports to continue receiving opioid settlement funds from DPHW. [*Id.*]. Taylor seeks a "judicial declaration invalidating the opioid settlement funds estimated at $250,150.15" paid to FHC—a sub-recipient of the opioid settlement funds. [*Id.*].

Defendants renewed their motion to dismiss the claims in Taylor's amended complaint, and Taylor again moved for leave to amend her complaint.

## II.     MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

Taylor moves for leave to file a second amended complaint. [DE 45]. Her proposed pleading largely resembles her first amended complaint. Taylor fails to identify the differences between the two. From what the Court can glean, the proposed second amended complaint purports to make the following changes: (1) adding "the Public Health Service Act § 330" as one of the statutes Taylor claims was violated [DE 45-2 at 641]; (2) adding several sentences about FHC's status as a federally qualified health center ("FQHC") [*Id.* at 643]; (3) adding the phrase "FQHC" various times to describe FHC [*Id.* at 643-66]; (4) adding "Title VII § 1983 and Title IX" as bases

for holding the Board of Health and CSB vicariously liable for the actions of FHC [*Id.* at 668]; (5) adding an allegation that the FHC employees were "state actors performing a public function on behalf of FQHC under color of law under both the First and Fourteenth resembles her Amendments" [*Id.* at 643]; and (6) attaching "[a] copy of Declaration of Taylor" [*Id.* at 643].

Among the disjointed and repetitive allegations in the attached declaration are a handful of new allegations, including (1) that Taylor made "appointments for medical treatment or therapy for [her] restlessness, anxiety, depression, and very high blood pressure due to it affecting [her] everyday life and relationship prior to losing [her] health care insurance and benefits in that which is currently unaffordable for [her]" [DE 45-5 at 704]; (2) that "all allegations against" the FHC employees "involve[] actual present harm . . . , past harm . . . , and significant possibility of future harm" [*Id.* at 704]; (3) that "Cavanaugh and CHC and [Taylor] had an implied contract because they were [Taylor's] billing manager not FHCs in which Cavanaugh and CHC owed [her] a duty of good faith and fear dealing" [*Id.* at 707]; (4) that "Cavanaugh is a state actor on behalf of CHC, under color of state law as evidenced by performing a public function and running as a private company under both the First and Fourteenth Amendments" [*Id.* at 705]; (5) that Cavanaugh and CHC had "a covered employer-partnership with FHCs because they gave FHCs input and updates on [Taylor's] Medicare/Medicaid enrollment applications," and because they "influence[d] FHCs' decision to terminate [her] employment . . . by reporting that [she] did not meet the credentialing requirement in a timely manner" [*Id.* at 706]; (6) that Taylor has "standing as a local taxpayer to challenge the misuse of public funds awarded from the opioid settlement" [*Id.*]; and (7) that the CHC Defendants and FHC employees conspired to file false reports accusing Taylor of "failing to meet credentialing requirements and deadlines," and that there are "underlying torts" supporting

8

her civil conspiracy claim. [*Id.* at 704, 706]. The declaration fails to connect these allegations directly to any of the claims asserted in the proposed amended complaint.

A. Standard

When, as here, more than 21 days have passed since service of a motion under Rule 12(b), "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(2)(2). "The court should freely give leave [to amend] when justice so requires." *Id.* Leave to amend "should normally be granted unless there is some 'apparent or declared reason' to not allow the amendment." *Marx v. Centran Corp.*, 747 F.2d 1536, 1550 (6th Cir. 1984) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). That is, the Court should grant leave to amend unless there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman*, 371 U.S. at 182. "The grant or denial of leave to amend is within the discretion of the trial court, and review is for abuse of discretion." *Sec. Ins. Co. of Hartford v. Kevin Tucker & Assocs., Inc.*, 64 F.3d 1001, 1008 (6th Cir. 1995) (citing *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983)).

Further, "[d]istrict courts have a responsibility to construe *pro se* complaints liberally and to allow ample opportunity for amending the complaint when it appears that the *pro se* litigant would be able to state a meritorious claim." *McCallum v. Gilless*, 38 F. App'x 213, 216 (6th Cir. 2002).

B. Discussion

Taylor provides very little argument in support of her motion for leave to amend, stating only that the "amendment will not unduly prejudice because it is filed to correct errors, add

9

verification page and declaration, and address any legal errors;" that she "did not file the amendment with undue delay;" and that she "does not request leave to amend in bad faith or for dilatory reasons." [DE 45 at 536–38]. She does not address whether amendment would be futile, nor does she explain how the minimal additions she has made cure the deficiencies of her previous amended complaint. In response, FHC and the FHC employees argue that allowing Taylor to amend her complaint a second time would cause prejudice to Defendants by requiring them once again to respond to an amended complaint that fails to bolster Taylor's claims. [DE 51 at 749]. All Defendants also argue that amendment would be futile. [*Id.* at 750; DE 47 at 718; DE 52 at 761].

While there is no delay or obvious bad faith on Taylor's part in seeking to amend her complaint, this is her second time attempting to cure deficiencies to avoid dismissal. For instance, FHC's initial motion to dismiss made Taylor aware that her original IIED claim was deficient because she did not allege conduct that rose to the level of "outrageous and intolerable" and because she failed to allege the severity of her emotional distress. [DE 6 at 88–90]. Taylor attempted to correct those deficiencies in the amended complaint by adding factual allegations that she was "pranked" and "stalked" by FHC employees, by labeling the conduct of FHC employees as "outrageous," and by alleging that she suffered "severe emotional distress[,] sleepless nights[,] . . . lasting embarrassment, humiliation, reputation damage, and mental anguish" as a result of the FHC Employees' actions. [DE 26 at 376–81]. The FHC employees then re-filed their motion to dismiss, arguing again that the amended complaint fails to allege outrageous and intolerable conduct and fails to allege severe emotional distress requiring medical treatment. [DE 41 at 513–16]. Now, Taylor once again attempts to rectify the purported inadequacies of her IIED claim, albeit with minor additions that add little to the viability of her claim.

Similarly, the FHC employees explained in their original motion to dismiss that Count VII for breach of the covenant of good faith and fair dealing must be dismissed because Taylor failed to allege the existence of a contract between her and the FHC employees. [DE 6 at 91]. In her amended complaint, Taylor once again failed to allege a contractual relationship between her and the FHC employees. Now, in the declaration attached to her proposed second amended complaint, she apparently alleges that she had a contractual relationship with the FHC employees because they were "state actors acting on behalf of [FHC]," with whom she did have a contract. [DE 45-5 at 704]. Yet the existence of a contractual relationship between Taylor and FHC does not by itself give rise to a contractual relationship between Taylor and all FHC employees. *See Ping v. Beverly Enters., Inc.*, 376 S.W.3d 581, 595 (Ky. 2012) (noting the "general rule that only parties to a contract may enforce or be bound by its provisions"); *Collins v. Kentucky Lottery Corp.*, 399 S.W.3d 449, 455 (Ky. App. 2012) ("The elements of a contract are: offer and acceptance, full and complete terms, and consideration.").

This same issue exists with respect to Taylor's claims against the CHC Defendants. For instance, in their original motion to dismiss, they pointed out that Taylor's claim for civil conspiracy failed to identify what underlying tort was being alleged. [DE 7 at 102–03]. Taylor's amended complaint continues to lack any specific allegation of an underlying tort. In the declaration attached to Taylor's proposed second amended complaint, she purports to correct this by broadly proclaiming "I contend that there is [sic] underlying torts under Kentucky laws and case laws based upon my civil conspiracy claim[.]" Taylor's proposed second amended complaint and declaration is rampant with similar conclusory statements that attempt—and fail—to cure deficiencies already brought to her attention when she filed her original complaint. Her continued failure to cure these deficiencies weighs against granting leave to amend for a second time.

11

Moreover, while allowing a second amended complaint would not cause substantial prejudice, it would force Defendants to once again parse through a pleading that contains very few substantive additions and incur costs in rewriting and re-filing their motions to dismiss. Thus, while prejudice to Defendants is minimal at this early stage of litigation, it nonetheless weighs against granting leave.

Most importantly, the changes in Taylor's proposed second amended complaint would be futile. "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000). An action may be dismissed under Fed. R. Civ. P. 12(b)(6) if the complaint fails to state a claim upon which relief can be granted. To survive dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A complaint will be dismissed pursuant to Rule 12(b)(6) if no law supports the claim made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561-64 (2007)).

First, the declaration that Taylor seeks to file in conjunction with the proposed second amended complaint contains disorganized, repetitive allegations lacking a clear nexus to the claims asserted in the proposed pleading. In other words, the declaration does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The declaration fails to "connect specific facts or events with the various causes of action she asserted," which violates "Rule 8(a)(2)'s requirement that she provide the defendants 'adequate

12

notice of the claims against them and the grounds upon which each claim rests.'" *Lee v. Ohio Educ. Ass'n*, 951 F.3d 386, 392–93 (6th Cir. 2020) (quoting *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 947 (7th Cir. 2013); and *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018)).

In addition to this pleading deficiency, the substance of the declaration and proposed second amended complaint is largely indistinguishable from Taylor's first amended complaint. Several of her additions merely repeat—albeit more elaborately—what was already stated in her first amended complaint and therefore do not improve the likelihood of surviving a motion to dismiss. For instance, her first amended complaint states that FHC is an FQHC.[3] [DE 26 at 383]. The proposed second amended complaint adds several sentences expanding on FHC's status as an FQHC, and the attached declaration repeatedly refers to FHC as an FQHC. [DE 45-2 at 643; DE 45-5 at 702]. Given that the amended complaint already alleges that FHC is an FQHC, these additional allegations add little to the substance of the amended complaint. The declaration also repeats and re-words allegations from her first amended complaint that: FHC employees stalked, pranked, and imprisoned Taylor in her office; FHC employees engaged in "outrageous and intolerable" conduct; Taylor had an implied contract with CHC; the Board of Health is in a principal-agent relationship with FHC and is therefore vicariously liable for FHC's acts; and CHC, Cavanaugh, and the FHC employees conspired to violate Taylor's civil rights by filing "false reports." [DE 45-5 at 701–08]. Once again, restating these allegations with different phrasing does nothing to improve the viability of Taylor's claims and instead produces an unwieldy collection of allegations that fail to put each Defendant on notice of the allegations against them.

---

[3] The amended complaint asserts that "FHCs is a federally qualified health center (hereinafter "FQHC") in which provides primary medical, dental, and mental healthcare services to members of the community." [DE 26 at 383].

To the extent that the allegations in the proposed second amended complaint and declaration are substantively different from those in the first amended complaint, the allegations are conclusory or would not otherwise survive a motion to dismiss. For instance, the proposed second amended complaint invokes the "public function" test as a basis for § 1983 liability for the FHC employees and Cavanaugh. Faced with the FHC employees' argument that her § 1983 claims must fail because the FHC employees are not state actors, Taylor now asserts that both the FHC employees and Cavanaugh are "state actors, individually acting and performing a public function on behalf of FQHC, under color of law." [*Id.* at 702, 705]. Under the public function test, "a private party is deemed a state actor if he or she exercised powers traditionally reserved exclusively to the state." *Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir. 2003). This test has been interpreted narrowly, such that "[o]nly functions like holding elections, exercising eminent domain, and operating a company-owned town" constitute "state action." *Id.* (citations omitted). The Sixth Circuit has explained that "[m]edical care alone is not a traditionally exclusive public function" that would give rise to § 1983 liability. *Nugent v. Spectrum Juv. Just. Servs.*, 72 F.4th 135, 142 (6th Cir. 2023). Neither the proposed amended complaint nor the attached declaration provides any factual allegations that support Taylor's conclusory statement that the FHC employees and Cavanaugh performed functions "traditionally reserved exclusively to the state." *See Chapman*, 319 F.3d at 833. Without this, her attempt to base her § 1983 claim on the assertion that the FHC employees and Cavanaugh performed a public function would not survive a motion to dismiss.

The attached declaration also newly alleges that Taylor made "appointments for medical treatment or therapy for [her] restlessness, anxiety, depression, and very high blood pressure due to it affecting [her] everyday life and relationship prior to losing [her] health care insurance and benefits in that which is currently unaffordable for [her]." [DE 45-5 at 704]. This addition attempts

14

to address the FHC employees' argument that Taylor's first amended complaint failed to allege the severity of her emotional distress under the IIED cause of action. [DE 41 at 516–17].

To state a claim for IIED under Kentucky law, a party must show that: "(1) the wrongdoer's conduct was intentional or reckless, (2) the wrongdoer's conduct was outrageous and intolerable, (3) there is a causal connection between the conduct and the emotional distress, and (4) the emotional distress suffered is severe." *Benningfield v. Pettit Env't, Inc.*, 183 S.W.3d 567, 572 (Ky. App. 2005). For conduct to be considered "extreme and outrageous" it must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Humana of Kentucky, Inc. v. Seitz*, 796 S.W.2d 1, 3 (Ky. 1990) (quoting Restatement (Second) of Torts, § 46 Comment d). "In Kentucky, IIED 'is not available for petty insults, unkind words and minor indignities. Nor is it to compensate for behavior that is cold, callous and lacking sensitivity.'" *McIlwain v. Berry*, No. 3:23-CV-130-CHB, 2025 WL 2200747, at *19 (W.D. Ky. Aug. 1, 2025) (quoting *Osborne v. Payne*, 31 S.W.3d 911, 914 (Ky. 2000)). For emotional distress to be considered "severe," it must be "substantially more than mere sorrow" or embarrassment. *Benningfield*, 183 S.W.3d at 572. "Distress that does not significantly affect the plaintiffs [sic] everyday life or require significant treatment will not suffice." *Osborne v. Keeney*, 399 S.W.3d 1, 17 (Ky. 2012).

Even with the added allegation that she made medical appointments for her emotional distress, Taylor's amended IIED claim would not survive a motion to dismiss. First, the conduct she alleges the FHC employees engaged in does not "go beyond all possible bounds of decency" and therefore does not rise to the level of "outrageous." For instance, Taylor maintains that the FHC employees "pranked" her, but her allegations reveal that she simply did not receive a message informing her of the two-hour delayed start during a snowstorm because she had already left work

15

for the day. [DE 45-2 at 663]. She also claims she was "stalked" and "harassed" through "unwanted surveillance," but again, the details of her allegations reveal that an FHC employee simply texted a security guard about Taylor's whereabouts on February 19, 2025. [*Id.* at 667]. She further claims that she was "imprisoned" inside her office, but the specific allegations state that "Defendant FHC's CEO, Defendant Fulkerson, and Meiman rushed into [Taylor's], office" and "[t]he CEO announced that he was suspending [Taylor's] employment, then he left a folder on her secondary desk." [*Id.* at 666]. In other words, she claims she was "imprisoned" when her supervisor simply closed the door to her office to terminate her. Finally, she alleges that a CHC employee emailed Taylor threatening her job and that she spread a rumor about Taylor that she did not meet her employment requirements. [*Id.* at 665–66]. Neither threatening to fire someone, nor actually firing them, rises to the level of "outrageous" conduct required to support an IIED claim. *See Starks v. Mayfield Consumer Prods., LLC*, No. 5:22-CV-185-BJB, 2023 WL 4875885, at *6 (W.D. Ky. July 31, 2023). In short, none of the conduct Taylor alleges is so atrocious as to be considered "utterly intolerable in a civilized community." Accordingly, even with the additional allegations regarding the severity of her emotional distress in the proposed second amended complaint, the IIED claim would not survive a 12(b)(6) motion to dismiss, and amendment would be futile.

The declaration also adds that "all allegations against" the FHC employees "involve[] actual present harm (e.g., sleepless nights, restlessness, panic attacks, depression, very high blood pressure), past harm (e.g., reputational, harassment), and significant possibility of future harm (e.g., relationship, mental, emotional, and medical)[.]" [DE 45-5 at 704]. While Taylor does not connect this allegation to any claim in her proposed second amended complaint, it is likely intended to address the FHC employees' argument that her injunctive relief claim failed to allege "actual present harm or a significant possibility of future harm." [DE 41 at 520]. Under Count XI

16

for declaratory and injunctive relief, Taylor alleges that Davis, an FHC employee, submitted fraudulent status reports to continue receiving opioid settlement funds from DPHW. [DE 45-2 at 860–81]. While Taylor mentions Davis in the cause of action, she appears to seek declaratory and injunctive relief only with respect to Defendant DPHW. That is, she maintains that "[a]n actual controversy has arisen and now exists between [Taylor] and Defendant [DPHW]," and then requests a "judicial declaration invalidating the opioid settlement funds estimated at $250,150.15" paid by DPHW to FHC—a sub-recipient of the opioid settlement funds. [*Id.*]. She also requests an injunction to prevent DPHW from "enforcing the Ordinance and/or or the said sub-recipient's opioid settlement funds[.]" [*Id.* at 683]. Given that this cause of action is asserted only against DPHW, Taylor's new assertion that "all allegations against" the *FHC employees* involve present, past, and future harm does not meaningfully help this claim.

Moreover, even if Count XI were properly asserted against Davis, the new allegation in the declaration would be futile. "Past harm allows a plaintiff to seek damages, but it does not entitle a plaintiff to seek injunctive or declaratory relief." *Kanuszewski v. Michigan Dep't of Health & Hum. Servs.*, 927 F.3d 396, 406 (6th Cir. 2019). "When seeking declaratory and injunctive relief, a plaintiff must show actual present harm or a significant possibility of future harm in order to demonstrate the need for pre-enforcement review." *Id.* (quoting *National Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997)). Taylor's meager statement that she will suffer future harm if opioid settlement funds continue being paid out is conclusory and therefore insufficient for motion to dismiss purposes.

Relatedly, Taylor adds in the declaration that she has "standing as a local taxpayer to challenge the misuse of public funds awarded from the opioid settlement/grant." [DE 45-5 at 707]. This addition reflects an effort to counter DPHW's argument that Taylor lacks standing to seek

17

declaratory or injunctive relief because she has not demonstrated an injury resulting from DPHW's apportionment of those funds. [DE 32 at 443]. While "municipal taxpayers may fulfill the injury requirement by pleading an alleged misuse of municipal funds," this is limited to *resident* taxpayers. *Smith v. Jefferson Cnty. Bd. of Sch. Comm'rs*, 641 F.3d 197, 210 (6th Cir. 2011); *see also Commonwealth of Massachusetts v. Mellon*, 262 U.S. 447, 486 (1923) ("[R]esident taxpayers may sue to enjoin an illegal use of the moneys of a municipal corporation."). Taylor alleges that she is a resident of Shelbyville, Shelby County, yet she seeks to assert taxpayer standing for alleged misuse of Louisville/Jefferson County municipal funds. [DE 45-2 at 670]. Accordingly, her conclusory assertion that she possesses taxpayer standing is rebutted by the factual allegations in her own pleading and would not survive a motion to dismiss. *See Davis v. Detroit Pub. Schs. Cmty. Dist.*, 835 F. App'x 18, 24 (6th Cir. 2020) (finding that plaintiff, a Highland Park resident, could not assert taxpayer standing because was not a Detroit citizen and therefore had no injury-in-fact from Detroit's misuse of tax funds).

Next, Taylor adds an allegation that she had an implied contract with Cavanaugh and CHC because of their role as Taylor's billing manager. [DE 45-4 at 707]. She maintains that they owed her "a duty of good faith and fair dealing in accordance with Medicare/Medicaid laws and regulations," and that they violated the implied agreement by failing to adhere to Medicare/Medicaid laws and by sharing Taylor's login credentials with FHC employees. [*Id.* at 705–07]. Kentucky law is clear that "[w]ithout a contract, there can be no breach of the duty of good faith and fair dealing." *Bisig v. Time Warner Cable, Inc.*, No. 3:14-CV, 2018 WL 1476679, at *6 (W.D. Ky. Mar. 26, 2018), *aff'd*, 940 F.3d 205 (6th Cir. 2019). By newly alleging that an implied contract existed, Taylor attempts to remedy her previous failure to plead a contractual relationship with the CHC Defendants. Yet Taylor's assertion that an implied contract existed is

18

conclusory. As with express contracts, implied contracts require "a mutual assent by the parties—a meeting of minds—and also an intentional manifestation of such assent." *Furtula v. Univ. of Kentucky*, 438 S.W.3d 303, 308 (Ky. 2014) (quoting *Kellum v. Browning's Adm'r*, 21 S.W.2d 459, 463 (Ky. 1929)). The only fact Taylor pleads in support of her assertion that an implied contract was created is that the CHC Defendants were her "billing manager[s]," but she fails to allege any mutual assent or intentional manifestation of such assent. Her new allegation that she had an implied contract is therefore futile.

Taylor also attempts to bolster her civil conspiracy claim by adding that the CHC Defendants and FHC employees conspired to file false reports accusing Taylor of failing to meet credentialing requirements and deadlines. [DE 45-5 at 706]. Yet, "civil conspiracy is not a free-standing claim; rather, it merely provides a theory under which a plaintiff may recover from multiple defendants for an underlying tort." *Stonestreet Farm v. Buckram Oak Holdings*, Nos. 2008–CA–002389–MR, 2009–CA–000026–MR., 2010 WL 2696278, at *13 (Ky. App. July 9, 2010) (citing *Davenport's Adm'x v. Crummies Creek Coal Co.*, 184 S.W.2d 887, 888 (1945)). Taylor fails to allege a specific underlying tort that FHC and CHC conspired to commit, and her addition that "there is [sic] underlying torts under Kentucky laws and case laws based upon my civil conspiracy claim" is simply a legal conclusion with no factual support. [DE 45-4 at 704]. As discussed below in relation to CHC Defendants' motion to dismiss, even if the Court infers that Taylor intended to allege tortious interference with a contract, she fails to plead the *prima facie* elements of that claim. As a result, her new allegation that the CHC Defendants and FHC employees conspired to file false reports is futile, as she has not alleged the independent underlying tort necessary to sustain a civil conspiracy claim.

19

Taylor also attempts to add the allegation that Cavanaugh and CHC had "a covered employer-partnership with FHCs because they gave FHCs input and updates on [her] Medicare/Medicaid enrollment applications," and because they "influence[d] FHCs' decision to terminate [her] employment." [*Id.* at 706]. Confusingly, Taylor also admits that she has "no knowledge" about the existence of a "contractual relationship between Cavanaugh, CHC and FHCs." [*Id.*]. The purpose of this new allegation is unclear, although it may be another attempt to assert the existence of a contract between Taylor and the CHC Defendants. In other words, she alleges that FHC's contract with CHC to handle CMS submissions on behalf of FHC employees, including Taylor, makes CHC a joint employer with FHC. While a "defendant who does not directly employ the plaintiff still may be considered an "employer" under the joint employer theory," the plaintiff must show that "one defendant has control over another company's employees sufficient to show that the two companies are acting as a 'joint employer' of those employees." *Bradford v. Prosoft, LLC*, No. 3:16-CV-00373-CRS-DW, 2017 WL 1458201, at *4 (W.D. Ky. Apr. 24, 2017) (citing *Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 993 (6th Cir. 1997)). To the extent Taylor adds this joint-employer allegation to support her breach of contract claim against CHC, it is futile because she fails to allege that FHC had control over CHC employees or vice versa.

Finally, to the extent Taylor attempts to add new bases of liability for the various Defendants, these additions would also be futile. She seeks to add "the Public Health Service Act § 330" as one of the statutes that was violated, [DE 45-2 at 640], and she adds § 1983 and Title IX as bases for holding the Board of Health and CSB vicariously liable for the actions of FHC, their alleged "agent." [*Id.* at 668]. First, section 330 of the Public Health Service Act ("PHSA"), available as amended as 42 U.S.C. § 254b, authorizes the Secretary of Health and Human Services

20

to provide grants to public and nonprofit private entities to provide grants to medically underserved populations. 42 U.S.C. § 254b(c). Taylor alleges that FHC is an FQHC receiving funding under the PHSA, which she uses to support her claim that the FHC employees were "state actors performing a public function." [DE 45-2 at 643]. However, she fails to state how the PHSA serves as an independent basis for liability. Second, "[s]ection 1983 will not support a claim based on a *respondeat superior* theory of liability." *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 (1978)). Thus, Taylor's attempt to make the Board of Health liable for the actions of its alleged agent based on § 1983 fails. Finally, Title IX prohibits discrimination on the basis of sex in education programs that receive federal funding. *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 638 (1999). Taylor alleges no discrimination in education, so this basis for liability likewise fails.

Accordingly, because Taylor has repeatedly failed to cure deficiencies in her complaint and because Taylor's proposed second amended complaint would be futile, the Court denies Taylor's motion for leave to file an amended complaint.

### III.    MOTION FOR LEAVE TO FILE A SUR-REPLY

Taylor moves for leave to file a sur-reply to the FHC employees' reply in support of their motion to dismiss the amended complaint. [DE 50]. In support, Taylor argues that the FHC employees' reply "raise[s] new cases, new discoverable evidence, and several issues for the first time[.]" [DE 50 at 738]. Taylor fails to specify which new cases, evidence, or issues were asserted for the first time in the FHC employees' reply. The FHC employees have not responded to Taylor's motion.

Whether to permit a party to file a sur-reply is a matter left to the trial court's discretion. *Key v. Shelby Cnty.*, 551 F. App'x 262, 264 (6th Cir. 2014) (citing *Eng'g & Mfg. Servs., LLC v. Ashton*, 387 F. App'x 575, 583 (6th Cir. 2010)); *Tanielian v. DaimlerChrysler Corp.*, 108 F. App'x 386, 387 (6th Cir. 2004)). "Although the Federal Rules of Civil Procedure do not expressly permit the filing of sur-replies, such filings may be allowed in the appropriate circumstances, especially '[w]hen new submissions and/or arguments are included in a reply brief, and a nonmovant's ability to respond to the new evidence has been vitiated.'" *Seay v. Tennessee Valley Auth.*, 339 F.3d 454, 481 (6th Cir. 2003). "As many courts have noted, '[s]ur-replies . . . are highly disfavored, as they usually are a strategic effort by the nonmoving party to have the last word on a matter.'" *Liberty Legal Found. v. Nat'l Democratic Party of the USA, Inc.*, 875 F. Supp. 2d 791, 797 (W.D. Tenn. 2012) (quoting *In re Enron Corp. Secs.*, 465 F. Supp. 2d 687, 691 n.4 (S.D. Tex. 2006)). "The Sixth Circuit has held that a district court does not abuse its discretion in denying leave to file a sur-reply where the opposing party's reply did not raise any new legal arguments or introduce new evidence." *Id.*; *see, e.g.*, *Key*, 551 F. App'x at 265 (holding that district court's denial of motion to file sur-reply was not abuse of discretion due to lack of new arguments raised in reply and six-month delay between filing of reply and motion for sur-reply).

Taylor does not point to any new legal arguments or evidence raised by the FHC employees in their reply. Moreover, a review of the FHC employees' motion to dismiss and their reply in support thereof reveals that the arguments presented in both are the same. They argue that: (1) Counts I-III, VIII, and IX lack sufficient factual allegations or clarity to survive under Rules 8(a) and 12(b)(6) and that the statutes Taylor cites do not provide for individual liability [DE 41 at 508–10; DE 49 at 727–29]; (2) the FHC employees cannot be liable for constitutional violations because they are not state actors [DE 41 at 511; DE 49 at 729]; (3) Taylor fails to adequately allege

22

"outrageous and intolerable conduct" or severe emotional distress as required for an IIED claim [DE 41 at 514–17; DE 49 at 730–32]; (4) Taylor fails to allege the existence of a contract between herself and the FHC employees, so her claim for breach of the covenant of good faith and fair dealing fails [DE 41 at 517; DE 49 at 732]; (5) Taylor fails to allege an underlying tort, so her civil conspiracy claim fails [DE 41 at 518; DE 49 at 732–33]; and (6) Count XI for declaratory/injunctive relief fails because Taylor only alleges past injuries. [DE 41 at 519–20; DE 49 at 733]. Given that the legal arguments presented in both filings are identical, Taylor had a full and fair opportunity to address the arguments made by the FHC employees.

For these reasons, the Court **DENIES** Taylor's motion for leave to file a sur-reply. [DE 50].

**IV.    MOTIONS TO DISMISS**

A.  Standard

Federal Rule of Civil Procedure 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This standard does not "impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. Dismissal under Rule 12(b)(6) is warranted "only

23

if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims that would entitle him or her to relief." *Zaluski v. United Am. Healthcare Corp.*, 527 F.3d 564, 570 (6th Cir. 2008).

Because a motion to dismiss challenges the sufficiency of the pleadings, "[i]t is not the function of the court [in ruling on such a motion] to weigh evidence." *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). Rather, to determine whether the plaintiff set forth a "plausible" claim, the Court "must construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein." *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994). Yet the Court is "not bound to accept as true a legal conclusion couched as a factual allegation"; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). In deciding a motion to dismiss, the Court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted). "A complaint will be dismissed . . . if no law supports the claim made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561–64).

*Pro se* pleadings are held to a less stringent standard than formal pleadings drafted by attorneys. *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). Yet, "the lenient treatment generally accorded to *pro se* litigants has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). A "complaint must contain either direct or inferential allegations respecting all the material

24

elements to sustain a recovery under some viable legal theory" and "the less stringent standard for *pro se* plaintiffs does not compel the courts to conjure up unpleaded facts to support conclusory allegations." *Leisure v. Hogan*, 21 F. App'x 277, 278 (6th Cir. 2001). Additionally, the Court cannot "create a claim which [the plaintiff] has not spelled out in his pleading." *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). A *pro se* complaint must still contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory. *See Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir. 1988). Ultimately, "[t]he Court's duty to construe a *pro se* complaint liberally does not absolve a plaintiff of the duty to comply with the Federal Rules of Civil Procedure by providing each defendant with fair notice of the basis of the claim." *Jones v. Cabinet For Fams. & Child.*, No. 3:07CV-11-S, 2007 WL 2462184, at *4 (W.D. Ky. Aug. 29, 2007) (citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514 (2002)).

It is well settled that a plaintiff waives her claim by failing to respond to or refute arguments made by the defendant in a motion to dismiss, and "the Court assumes he concedes this point and abandons the claim." *Mekani v. Homecomings Fin., LLC*, 752 F. Supp. 2d 785, 797 (E.D. Mich. 2010); *see also Exch. Facilitator Co.*, 531 F. App'x 567 (6th Cir. 2013) (recognizing that the plaintiff had waived claim by failing to respond to or refute arguments made by the defendants in the district court); *Allstate Ins. Co. v. Global Med. Billing, Inc.*, 520 F. App'x 409, 412 (6th Cir. 2013) (same); *Doe v. Bredesen*, 507 F.3d 998, 1007–08 (6th Cir. 2007) (affirming the district court's conclusion that the plaintiff abandoned certain claims by failing to raise them in his brief opposing the government's motion to dismiss). Thus, "if a plaintiff fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived

opposition to the motion." *Humphrey v. U.S. Att'y Gen.'s Off.*, 279 F. App'x 328, 331 (6th Cir. 2008) (quoting *Scott v. State of Tennessee*, 878 F.2d 382, 1989 WL 72470, at *2 (6th Cir. 1989)).

   B.   DPHW Motion to Dismiss [DE 32]

Though not entirely clear from her amended complaint, Taylor appears to assert the following claims against DPHW: (Count I) racial discrimination; (Count II) age discrimination; and (Count XI) declaratory and injunctive relief. DPHW moves to dismiss Taylor's claim for declaratory and injunctive relief because she has suffered no injury and therefore lacks standing to bring such a claim. [DE 32 at 443]. To the extent that the Court interprets Taylor's amended complaint as asserting other causes of action against DPHW, DPHW "incorporates by reference all the arguments it made in its [original] motion to dismiss." [*Id.* at 444]. In its original motion to dismiss, DPHW argued that (1) DPHW has no employer-employee relationship or principal-agent relationship with FHC and therefore cannot be held liable for the actions of FHC employees; (2) DPHW is not an independent legal entity capable of being sued; and (3) it is entitled to sovereign immunity. [DE 9-1 at 129–32]. Taylor does not respond to DPHW's argument that she lacks standing other than stating that she "addresse[s] defendant's argument in her proposed second amended . . . complaint." [DE 46-1 at 633]. She also fails to address DPHW's argument that any other claims stated against it must be dismissed. The Court could find that Taylor's failure to respond waives opposition to DPHW's arguments. However, out of an abundance of caution and in recognition of Taylor's *pro se* status, the Court will consider the merits.[4]

To the extent Taylor asserts claims against DPHW under Counts I and II for racial discrimination and age discrimination, those claims must be dismissed because Taylor does not even mention DPHW, let alone allege facts that would support such claims. While Counts I and II

---

[4] As noted throughout this opinion, Taylor fails to respond to most arguments presented by Defendants. The Court nevertheless will consider the merits of Defendants' arguments in each motion to dismiss.

26

of the amended complaint refer generally to "Defendants," the specific factual allegations refer to Taylor's suspension and termination—actions carried out by her employer, FHC. [DE 26 at 367–69]. Without any direct or inferential allegations that relate to DPHW, Counts I and II will be dismissed as to DPHW.

With respect to Count XI for declaratory and injunctive relief, Taylor alleges that "[a]n actual controversy has arisen and now exists between [Taylor] and [DPHW]." [DE 26 at 394]. She asserts that FHC received $250,150.15 from DPHW and that FHC employee Davis submitted fraudulent status reports to continue receiving the opioid settlement funds. [*Id.*]. She seeks a "judicial declaration invalidating the opioid settlement payouts" to FHC and a "stay, temporary restraining order, preliminary injunction, and permanent injunction" to prevent DPHW from continuing to pay out opioid settlement funds. [*Id.* at 396]. Taylor fails to allege, however, that she herself suffered an injury because of DPHW's alleged improper payout of funds. Rather, she alleges that the general public suffered injury. [*Id.*].

To invoke the jurisdiction of a federal court, a plaintiff "must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). To satisfy the standing requirement, the plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins,* 578 U.S. 330, 338 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Injury in fact is "a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998) (internal quotation marks omitted) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 149 (1990)).

27

Taylor does not allege that she suffered an actual, concrete injury because of some action by DPHW. Nor does Taylor allege that DPHW itself committed any wrongdoing in paying out funds. Rather, she alleges that Davis submitted false reports, on which DPHW ostensibly relied in distributing funds. She has therefore not alleged an injury in fact that is fairly traceable to DPHW. As a result, Taylor lacks standing to assert her claim for declaratory and injunctive relief, and this claim will be dismissed as to DPHW.

Accordingly, the Court **GRANTS** DPHW's motion to dismiss. [DE 32].

C.  CHC and Cavanaugh Motion to Dismiss [DE 33]

Taylor's amended complaint asserts Counts I (racial discrimination), II (age discrimination), IV (civil conspiracy), and IX (retaliation for whistleblowing) against both CHC and Cavanaugh. She asserts Counts V (IIED), VII (breach of the covenant of good faith and fair dealing), and X (breach of the providers' contract) against just CHC. The CHC Defendants maintain that all of these claims must be dismissed for failure to state a claim under Rule 12(b)(6).

*1.  Counts I and II*

With respect to Counts I and II, the CHC Defendants argue that these are employment law claims, and Taylor "has solely alleged an employment relationship with FHC." [DE 33 at 463]. Moreover, Taylor supports these claims with allegations regarding "her suspension and termination from employment, actions she attributes to FHC directly." [*Id.*]. Taylor does not respond to these arguments.

As the Court has already explained, Counts I and II only allege conduct by FHC. Taylor has therefore provided no direct or inferential allegations of conduct by the CHC Defendnats that could subject them to liability. As a result, Counts I and II will be dismissed as to CHC and Cavanaugh.

### 2. *Count IV*

The CHC Defendants maintain that Count IV for civil conspiracy must be dismissed because Taylor fails to allege any particularized conduct by CHC or Cavanaugh aimed at an unlawful act. Taylor does not respond to these arguments other than stating that she addresses the arguments in her proposed second amended complaint.

A civil conspiracy is defined as "a corrupt or unlawful combination or agreement between two or more persons to do by concert of action an unlawful act, or to do a lawful act by unlawful means." *Peoples Bank of N. Kentucky, Inc. v. Crowe Chizek & Co. LLC*, 277 S.W.3d 255, 261 (Ky. App. 2008) (quoting *Smith v. Bd. of Educ. of Ludlow*, 264 Ky. 150, 94 S.W.2d 321, 325 (1936)). "[C]ivil conspiracy is not a free-standing claim; rather, it merely provides a theory under which a plaintiff may recover from multiple defendants for an underlying tort." *Stonestreet Farm*, 2010 WL 2696278, at *13. To establish a civil conspiracy claim, a plaintiff "must show an unlawful/corrupt combination or agreement between the alleged conspirators to do by some concerted action an unlawful act." *Id.* (citing *Montgomery v. Milam*, 910 S.W.2d 237, 239 (Ky. 1995)). In clarifying the meaning of "concerted action," Kentucky courts reference the Restatement (Second) of Torts, Section 876:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he (a) does a tortious act in concert with the other or pursuant to a common design with him, or (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct separately considered, constitutes a breach of duty to the third person.

*Farmer v. City of Newport*, 748 S.W.2d 162, 164 (Ky. App. 1988) (quoting Restatement (Second) of Torts, Section 876 (1979)); *see also James v. Wilson*, 95 S.W.3d 875, 897 (Ky. App. 2002).

29

Thus, to satisfy the "concert of action" requirement, "there must be proof that the defendants acted tortiously pursuant to a common design, or that they rendered substantial assistance to others to accomplish the tortious act." *Id.* In other words, for a civil conspiracy to be found, a "necessary allegation is that the damage or death resulted from some overt act done pursuant to or in furtherance of the conspiracy." *Ford v. Batts*, No. 5:17-CV-94, 2019 WL 4126076, at *5 (W.D. Ky. Aug. 29, 2019) (quoting *Kloiber v. Daniel Kloiber Dynasty Tr.*, No. No. 2013-CA-000436-MR, 2014 WL 6882265, at *6 (Ky. App. Dec. 5, 2014)). "In the absence of such acts done by one or more of the conspirators and resulting in damage, no civil action lies against anyone since the gist of the civil action for conspiracy is the act or acts committed in pursuance of the conspiracy, not the actual conspiracy." *Id.* (quoting *Kloiber*, 2014 WL 6882265, at *6).

While the amended complaint fails to specifically identify an underlying tort, it does allege that the FHC employees, CHC, and Cavanaugh conspired and committed overt acts to induce breaches of contract between Taylor and FHC, between Taylor and CHC, between Taylor and her patients, and between Taylor and the "insurance payors." [DE 26 at 371]. The Court therefore assumes that the underlying tort Taylor seeks to assert is tortious interference with an employment contract. "Under Kentucky law, tort liability exists for the interference with a known contractual relationship, if the interference is malicious or without justification, or is accomplished by some unlawful means such as fraud, deceit, or coercion." *Steelvest, Inc. v. Scansteel Serv. Ctr. Inc.*, 807 S.W.2d 476, 487 (Ky. 1991) (citations omitted). To prevail on a tortious interference with a contract claim in Kentucky, a plaintiff must prove: (1) the existence of a contract; (2) the third party's knowledge of the contract; (3) that the third party intended to cause a breach of that contract; (4) that the third party did indeed cause a breach; (5) that this breach resulted in damages to the plaintiff; and (6) that the third party had no privilege or justification to excuse its conduct.

30

*Dennison v. Murray State Univ.*, 465 F. Supp. 2d 733, 755 (W.D. Ky. 2006). Because "civil conspiracy is not an independent tort," the CHC Defendants can only be liable for civil conspiracy if they could be liable for the underlying tort—in this case, tortious interference with a contract. *See Reed v. Gulf Coast Enters.*, No. 3:15-CV-00295, 2016 WL 79998, at *10 (W.D. Ky. Jan. 6, 2016).

Notably, Taylor does not assert tortious interference with a contract as an independent cause of action in her complaint. Even so, the Court will consider whether she has adequately pled the elements of such a claim as to the CHC Defendants. First, the only contracts that Taylor alleges the existence of are her employment contract with FHC and a purported "implied contract" with CHC. [DE 26 at 383, 392]. It is unclear what Taylor is referring to when she claims that the Defendants "induced a breach of contract between . . . [Taylor] and patients and between [Taylor] and the insurance payors (Medicaid, Medicare, and Commercial insurance)." [DE 26 at 371]. Moreover, to the extent that Taylor claims that the CHC Defendants interfered with Taylor's implied contract with CHC, the claim cannot stand because direct parties to a contract cannot be liable for tortious interference with their own contract. *See Griffin v. Jones*, 170 F. Supp. 3d 956, 968 (W.D. Ky. 2016) ("[A] person cannot tortiously interfere with a contract to which they are a party."); *see also Saunders v. Ford Motor Co.*, No. 314-CV-00594-JHM, 2015 WL 300523, at *6 (W.D. Ky. Jan. 22, 2015). Accordingly, the only contract that could serve as the basis for a tortious interference claim is Taylor's employment contract with FHC.

Taylor fails, however, to allege that CHC or Cavanaugh had knowledge of this contract or intended to cause its breach. Instead, Taylor merely asserts that CHC provided FHC with medical consultation, billing, and credentialing services and that, as part of these services, CHC handled Taylor's "application[s] to bill Medicaid, Medicare, and Commercial insurance companies[.]" [DE

31

26 at 360–61]. The amended complaint then enumerates a multitude of allegations without specifying which Defendant engaged in the alleged conduct or how that conduct led to a breach of Taylor's employment contract. For instance, Taylor alleges that the coconspirators

> "ma[de] false reports in Taylor's patients' eClinical Works electronic health records, . . . shar[ed] Taylor's confidential counseling and treatment notes with others such as FHC's CEO . . . , cancel[ed] Taylor's patient appointments, mius[ed] Taylor's provider numbers, fail[ed] to use coding modifiers accurately, fail[ed] to provide Taylor with her patients' explanation of payments, . . . allow[ed] unlicensed employees to supervise Taylor, prepar[ed] and submit[ed] false reports associated with the distribution of money awarded to Louisville metro government from the opioid settlement payouts . . . , [and] play[ed] a prank on Taylor during the Wintery ice storm[.]

[*Id.* at 371–72]. Taylor does not connect these actions to any particular Defendant, thus failing to put Defendants on notice of the allegations against them. She also fails to connect these allegations to a breach of her employment contract. Because the amended complaint does not allege that the CHC Defendants knew of Taylor's employment contract or intended to induce its breach, the amended complaint fails to state a claim for tortious interference with a contract. Without sufficient allegation of an underlying tort, Taylor also cannot satisfy the civil conspiracy requirement that the CHC Defendants committed an overt tortious act in furtherance of a conspiracy.

As a result, the Court grants the CHC Defendants' motion to dismiss with respect to Count IV.

### 3. *Count V – IIED*

Count V of the amended complaint asserts IIED against the FHC employees and CHC. The only allegations Taylor makes with respect to CHC are that a CHC employee emailed her threatening her job, told her that her Medicare application was denied, told her that she did not meet employment requirements, and spread unspecified rumors about Taylor. [DE 26 at 379]. CHC maintains that this conduct does not meet the high bar to establish an IIED claim. Taylor's

only response is that she addressed CHC's argument in her proposed second amended complaint. [DE 46-1 at 630].

As the Court already discussed in addressing Taylor's motion to amend, the conduct Taylor alleges cannot be described as "outrageous" as is required to state a claim for IIED. *See Benningfield*, 183 S.W.3d at 572. For conduct to meet the high bar for IIED, it must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Humana*, 796 S.W.2d at 3 (quoting Restatement (Second) of Torts, § 46 Comment d). Falsely telling Taylor that her Medicare application was denied and that she did not meet employment requirements with FHC does not "go beyond all possible bounds of decency" such that it would be "utterly intolerable in a civilized community." *See Starks*, 2023 WL 4875885, at *6. CHC's alleged threat also does not rise to this level, because "threatening to fire an employee, standing alone, plainly doesn't suffice" to state an IIED claim. *Id.* Finally, the vague allegation that a CHC employee spread a rumor about Taylor does not allow the Court to "draw the reasonable conclusion" that CHC engaged in outrageous conduct. *See Iqbal*, 556 U.S. at 678. Kentucky courts have found that conduct far more egregious than what Taylor alleges does not rise to the level of "outrageous" required for IIED. *See Allen v. Clemons*, 920 S.W.2d 884, 886 (Ky. App. 1996) (finding that erection of billboard broadcasting plaintiff's status as a convicted child molester did "not reach the level of outrageous conduct necessary to constitute a tort"); *Kentucky Farm Bureau Mut. Ins. Co. v. Burton*, 922 S.W.2d 385, 389 (Ky. App. 1996) (finding no outrageous conduct when defendant wrongfully garnished plaintiff's wages pursuant to a forged agreement).

In short, Taylor's allegations are either too benign or too nebulous to support a claim for IIED. As a result, the Court grants CHC's motion to dismiss as to Count V.

####    4.    *Count VII – Breach of the Covenant of Good Faith and Fair Dealing*

Under Count VII, Taylor alleges that she and CHC entered into an "implied contract," under which CHC "served as [Taylor's] certified provider credentialing specialist by which CHC had full and complete access to [Taylor's records.]" [DE 26 at 384]. She alleges that CHC agreed to manage Taylor's credentialing process; maintain access to Taylor's national provider identifier, records, passwords, and email; maintain Taylor's database and ensure compliance with federal and state laws; track expiration dates for Taylor's licenses and certifications; and communicate with insurance companies for Taylor. [*Id.* at 384–85]. She maintains that CHC, along with the FHC employees, unlawfully discriminated against Taylor; conspired to cause her injury; retaliated after she made complaints of potential harm to patients; terminated her employment; accessed her confidential treatment notes; making false statements in her patient's electronic health records; and failed to follow company policy and Kentucky mandatory reporting laws. [*Id.* at 385–86]. CHC argues that this claim must be dismissed because Taylor fails to adequately allege a contractual relationship, without which CHC owed her no duty of good faith and fair dealing.

Under Kentucky law, "[i]n every contract, there is an implied covenant of good faith and fair dealing." *Ranier v. Mount Sterling Nat. Bank*, 812 S.W.2d 154, 156 (Ky. 1991). "This covenant means that 'every contract carries a duty to do everything necessary to carry them out.'" *Morris v. Tyson Chicken, Inc.*, 497 F. Supp. 3d 282, 288 (W.D. Ky. 2020) (quoting *KSA Enters., Inc. v. Branch Banking & Tr. Co.*, 761 F. App'x 456, 460 (6th Cir. 2019)). In the absence of a contract, "there can be no breach of the duty of good faith and fair dealing*." Bisig v. Time Warner Cable, Inc.*, No. 3:14-CV-36-DJH-DW, 2018 WL 1476679, at *6 (W.D. Ky. Mar. 26, 2018), *aff'd*, 940 F.3d 205 (6th Cir. 2019). "A party alleging a breach of the covenant of good faith and fair dealing must provide evidence sufficient to support a conclusion that the party alleged to have acted in bad

34

faith has engaged in some conduct that denied the benefit of the bargain originally intended by the parties." *KSA Enters.*, 761 F. App'x at 461 (internal quotation marks omitted) (quoting *O'Kentucky Rose B. Ltd. P'ship v. Burns*, 147 F. App'x 451, 457–58 (6th Cir. 2005).

As an initial matter, Taylor fails to adequately allege the existence of a contract with CHC. She offers no evidence of an express contract and instead relies on the purported existence of a implied contract between her and CHC. The facts she alleges, however, fail to demonstrate any "actual agreement or meeting of minds" between her and CHC. *See Kellum v. Browning's Adm'r*, 231 Ky. 308, 21 S.W.2d 459, 465 (1929) (explaining that a contract implied in fact can be "inferred from the circumstances, the conduct, acts, or relation of the parties," but "requires an actual agreement or meeting of minds"). Taylor merely alleges that CHC provided certain services to Taylor, such as credentialing and billing. She fails to allege that CHC carried out these services pursuant to some agreement with Taylor, or that Taylor provided any consideration for these services, as is required for a contract implied in fact. *See Thompson v. Hunter's Ex'r*, 269 S.W.2d 266, 269 (Ky. 1954) (explaining that a contract implied in fact requires a "meeting of the minds upon a promise . . .to render services on the one part and a promise to pay for it on the other part"). Other allegations in the amended complaint suggest that CHC contracted with FHC to provide its employees with "medical consultation, billing, and credentialing," and that Taylor, as an FHC employee, utilized these services. [DE 26 at 260–61]. The amended complaint fails to allege how CHC's agreement with FHC could also create a contract between Taylor and CHC.

Taylor's also fails to allege that CHC engaged in conduct that "denied the benefit of the bargain originally intended by the parties." *KSA Enters.*, 761 F. App'x at 461 (quoting *O'Kentucky*, 147 F. App'x at 457–58). The amended complaint lacks any allegations as to the terms of the contract or what "benefit" was intended by Taylor and CHC. Accordingly, Taylor cannot show

35

that CHC's actions constituted bad faith attempts to deprive her of the benefit of that contract. For these reasons, the Court grants CHC's motion to dismiss as to Count VII.

    5.   *Count IX – Retaliation for Whistleblowing*

Count IX of the amended complaint asserts a cause of action under 42 U.S.C. § 1983. [DE 26 at 390]. Taylor maintains that the FHC employees, CHC, and Cavanaugh deprived her of her First and Fourteenth Amendment rights by retaliating against her "solely because of her race . . . for reporting reportable events . . . [and] unethical violations[.]" [*Id.* at 390–91]. She alleges that after making these reports, her boss denied her training opportunities and benefits, and that FHC suspended and ultimately terminated her. [*Id.* at 391]. She maintains that "Defendants acted under color of state law[.]" [*Id.* at 392]. CHC argues that "[t]here is no indication anywhere in the Amended Complaint that Cavanaugh or CHC were acting with any sort of authority granted by state law," and that Taylor attempts to attribute FHC's employment decisions to CHC and Cavanaugh. [DE 33 at 460]. Taylor's response does not address this argument. [DE 46-1 at 631].

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). To meet this standard, a plaintiff must demonstrate that (1) "she was deprived of a right secured by the Constitution or laws of the United States[,]" and (2) "the deprivation was caused by a person acting under color of state law." *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). "[A]cting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West*, 487 U.S. at 49 (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)); *see also Waters v. City of Morristown, TN*, 242 F.3d 353, 359 (6th Cir. 2001)

("Section 1983 is generally not implicated unless a state actor's conduct occurs in the course of performing an actual or apparent duty of his office, or unless the conduct is such that the actor could not have behaved as he did without the authority of his office."). "[C]onduct allegedly causing the deprivation of a federal right [must] be fairly attributable to the State"; that is, (1) "the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible[,]" and (2) "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).

Taylor alleges that CHC is a "company doing business in the State of Kentucky" that provides consultation, billing, and credentialing services to FHC. [DE 26 at 360]. Nowhere in the amended complaint does she allege that CHC is a government entity or that Cavanaugh is a government employee. She merely alleges, with no factual support, that CHC and Cavanaugh "acted under color of state law." [*Id.* at 392]. While "[p]rivate individuals may be considered state actors if they exercise power 'possessed by virtue of state law' and if they are 'clothed with the authority of state law[,]'" Taylor fails to allege facts indicating that CHC or Cavanaugh possessed or exercised power by virtue of state law. *See Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). Moreover, even if CHC and Cavanaugh were state actors, Taylor fails to allege that they engaged in conduct in the course of performing a duty of their office, which then violated Taylor's constitutional rights. The amended complaint therefore fails to show that the CHC Defendants' conduct was attributable to the state.

Moreover, Taylor fails to allege any specific conduct by CHC or Cavanaugh that suggests retaliatory action. Any specific factual allegations of retaliation involve FHC or the FHC employees, not CHC or Cavanaugh.

37

Accordingly, Count IX will be dismissed as to CHC and Cavanaugh.

6.  *Count X – Breach of the Provider's Contract*

Finally, Count X of the amended complaint asserts a breach of contract claim against CHC. [DE 26 at 392]. Taylor once again alleges that she had an implied contract with CHC and that "Defendants FHCs and CHC failed to perform their part of the employment contract and refused to provide Taylor's copies of her patients' explanation of payments in which belonged to Taylor." [*Id.* at 393]. CHC argues that Taylor fails to allege either a valid contract or a breach of that contract. [DE 33 at 461–62]. Taylor again offers no counterargument in her response. [DE 46-1 at 632].

Under Kentucky law, to establish a claim for breach of contract, "the complainant must establish three things: 1) existence of a contract; 2) breach of that contract; and 3) damages flowing from the breach of contract." *Metro Louisville/Jefferson Cnty. Gov't v. Abma*, 326 S.W.3d 1, 8 (Ky. App. 2009) (citing *Barnett v. Mercy Health Partners–Lourdes, Inc.*, 233 S.W.3d 723, 727 (Ky. App. 2007)). A valid contract requires "offer and acceptance, full and complete terms, and consideration." *Commonwealth v. Morseman*, 379 S.W.3d 144, 149 (Ky. 2012) (quoting *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 384 (Ky. App. 2002)). "For the terms to be considered complete they must be 'definite and certain' and must set forth the 'promises of performance to be rendered by each party.'" *Energy Home, Div. of S. Energy Homes, Inc. v. Peay*, 406 S.W.3d 828, 834 (Ky. 2013) (quoting *Kovacs v. Freeman*, 957 S.W.2d 251, 254 (Ky. 1997)).

Taylor's breach of contract allegations suffer from the same deficiencies as her claim for breach of the covenant of good faith and fair dealing. First, she fails to allege facts demonstrating an agreement between herself and CHC or the specific terms of that agreement. Second, even if Taylor adequately alleged the existence of an implied contract between her and CHC, the only

38

breach she identifies is a breach of the "employment contract" that she had with FHC. [DE 26 at 393]. She fails to explain how CHC's conduct breached the terms of their alleged implied agreement, or how that breach caused her damages. Without any clear allegations defining the terms of the purported contract or detailing how CHC failed to comply with those terms, Taylor's breach of contract claim cannot withstand a motion to dismiss. The Court therefore dismisses this claim with respect to CHC.

* * *

As set forth above, the amended complaint fails to state a claim with respect to all claims brought against CHC and Cavanaugh. Accordingly, the Court **GRANTS** the CHC Defendants' motion to dismiss.

D. <u>Board of Health Motion to Dismiss [DE 40]</u>

Count VI of Taylor's amended complaint alleges that the Board of Health is liable for the acts of FHC under a theory of *respondeat superior*/vicarious liability. [DE 26 at 381]. Taylor maintains that the Board of health had a "principal-agent relationship" with FHC, had "constitutional authority over" FHC, and was "legally responsible" for FHC and "its employees' wrongful acts within the scope of their employment[.]" [DE 26 at 362–63]. As support for this alleged principal-agent relationship, Taylor references FHC's articles of incorporation, which state that FHC "is formed [] to act as a constituted authority of the Louisville Metro Board of Health to provide for the operation, administration and provision of certain primary health services . . . in accordance with the provisions of KRS 58.180[.]" [DE 26 at 363; DE 40-1 at 497]. The amended complaint references 42 U.S.C. § 1981 as the basis for this claim. The Board of Health maintains that all of Taylor's claims are "legal conclusions without any supporting evidence," and that Taylor

39

"admits there were no direct or indirect negligent or discriminatory actions taken by the Board." [DE 40 at 493].

"[T]he doctrine of *respondeat superior*, also called vicarious liability, provides the legal rationale for holding a master responsible for a tort committed by his servant." *Patterson v. Blair*, 172 S.W.3d 361, 363 (Ky. 2005) (emphasis added). "The rule of *respondeat superior* embodies the theory that where one acts through the agency of another, in legal contemplation, he is himself acting and thus is responsible for acts of his agent. *Brooks v. Grams, Inc.*, 289 S.W.3d 208, 211 (Ky. App. 2008). Thus, [v]icarious liability extends only to negligent acts of an agent committed in the course and scope of the principal's business." *Roethke v. Sanger*, 68 S.W.3d 352, 361 (Ky. 2001).

In responding to Taylor's claim of *respondeat superior*, the Board of Health cites no cases and provides very little argument. The Board of Health simply asserts that (1) "[Taylor] candidly admits there were no direct or indirect negligent or discriminatory actions taken by the Board [of Health]"; (2) Taylor's reliance on 42 U.S.C. § 1981 is misguided; and (3) the FHC articles of incorporation shows the lack of a principal-agent relationship between the two. [DE 40 at 493–95]. First, Taylor does not "admit" that the Board of Health was not directly negligent but rather states that the Board of Health should be held liable "even if [it] was not directly negligent." [DE 26 at 383]. This statement simply expresses the essence of *respondeat superior*: that a principal may be held responsible for a tort committed by his agent even if the principal himself did not directly commit the tort. *See Patterson v. Blair*, 172 S.W.3d 361, 363–64 (Ky. 2005). Second, while the Board of Health is correct that § 1981 does not "make[] The Board vicariously liable for the alleged actions of Family Health Centers," Taylor's reference to that statute does not invalidate her claim of vicarious liability. *See Runyon v. McRary*, 427 U.S. 160, 168 (1976) (explaining that

42 U.S.C. § 1981 "prohibits racial discrimination in the making and enforcement of private contracts").

Third, contrary to the Board of Health's argument, it is not apparent from the allegations in Taylor's amended complaint or the FHC articles of incorporation that there is no employer-employee relationship between the Board of Health and FHC. Rather, Taylor alleges that such a relationship existed, and the articles of incorporation state that (1) FHC was formed to act "as a constituted authority of the Louisville Metro Board of Health"; (2) "[t]he affairs of [FHC] . . . shall be conducted by a Board of Directors" that consists of at least eleven members appointed by the Board of Health; and (3) the articles of incorporation can only be amended with approval by two-third of the members of the Board of Health. [DE 40-1 at 497–99]. Under Kentucky law, "[t]he existence of an agency relationship may be established circumstantially" and "the issue of whether the principal has a right to control the agent is critical to the determination of whether an agency relationship exists." *Couch v. Nat. Res. & Env't Prot. Cabinet*, 986 S.W.2d 158, 161 (Ky. 1999). Taylor both asserts that the Board of Health has authority over FHC and cites to articles of incorporation that suggest the Board of Health exercises some control over FHC. At this stage of proceedings, and with minimal counterargument from the Board of Health, these allegations are sufficient for Taylor's *respondeat superior* claim to survive a motion to dismiss.

The Court therefore **DENIES** the Board of Health's motion to dismiss.

E.  FHC Employees' Motion to Dismiss [DE 41]

The amended complaint asserts the following causes of action against the FHC employees: Count I (race discrimination); Count II (age discrimination); Count III (wrongful discharge); Count IV (civil conspiracy); Count V (IIED); Count VII (breach of the covenant of good faith and fair dealing); Count VIII (workplace harassment); and Count IX (retaliation). The FHC employees

41

maintain that Counts I–III, VIII, and IX either contain insufficient factual allegations or are too ambiguous to survive a 12(b)(6) motion to dismiss. [DE 41 at 508]. They also argue that Count V does not effectively allege the elements of IIED, Count VII fails to allege a contract between Taylor and the FHC employees, and Count IV fails to allege an underlying tort.[5] [*Id.* at 512–18].

### 1.  *Counts I–II – Race and Age Discrimination*

Taylor asserts Counts I and II for race and age discrimination under a variety of statutes: Title VII, § 102 of the Civil Rights Act of 1991; 42 U.S.C. § 1983; the ADEA; and the KCRA. [DE 26 at 368–69]. The FHC employees argue, first, that these Counts must be dismissed under Rule 8(a) because they are too convoluted for Defendants to make out Taylor's claims. [DE 41 at 509–10]. Second, the statutes Taylor cites do not provide for individual liability. [*Id.* at 510]. Finally, they maintain that any allegations of constitutional violations against the FHC employees must fail because they are not state actors. [*Id.* at 511].

As previously stated, Counts I and II lack specific factual allegations of conduct by the individual Defendants. Taylor simply claims that "Defendants" violated several statutes by terminating her employment. She neither mentions any of the FHC employees by name in these Counts nor alleges any specific discriminatory conduct by those Defendants. Further, she fails to connect any alleged conduct to the statutes she claims were violated. Later in the amended complaint, Taylor alleges that "Defendant FHCs unlawfully terminated Taylor's employment," [DE 26 at 386], but again, she does not allege that any individual FHC employee was responsible for this termination. With respect to the individual FHC employees, the amended complaint therefore does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that

---

[5] The FHC employees also respond to Count XI for declaratory an injunctive relief, but the Court does not understand that Count as being asserted against the FHC employees.

is plausible on its face'" for Counts I and II. *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 at 570). The Court therefore dismisses Counts I and II as to the FHC employees.

### 2. *Count III – Wrongful Discharge*

Under Count III for "wrongful discharge," Taylor alleges that she reported instances of "false reporting in patients' electronic health records" to Defendant Fulkerson, who "became aggressive, punitive and hostile" toward Taylor and attempted to cover up the allegations. [*Id.* at 370]. She reported "patients' abuse" to FHC CEO Bart Irwin and Defendant Davis, who thereafter "caused Taylor to suffer professional reputation damage." [*Id.*]. She also maintains that Davis "insisted that Taylor should have kept her mouth shut[.]" [*Id.*]. Taylor claims that FHC then suspended and fired her for making these reports. [*Id.*]. Taylor lists a variety of authorities on which she bases this claim: Title VII of the Civil Rights Act; § 102 of the Civil Rights Act of 1991; 42 U.S.C. § 1983; the ADEA; the KCRA; and KRS 216B.165. The FHC employees argue that, to the extent Taylor relies on Title VII, the ADEA, the KCRA, and KRS 216B.165, the claim must fail because those statutes do not provide a basis for individual liability. [DE 41 at 510].

The Sixth Circuit has held that "Congress did not intend individuals to face liability under the definition of 'employer' it selected for Title VII." *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 406 (6th Cir. 1997). As a result, Title VII claims brought against employees in their individual capacities cannot survive. The same is true for claims brought under the ADEA. *Id.* at 404 n.6 (explaining that "the liability schemes under Title VII [and] the ADEA . . . are essentially the same" and define "employer" in the same way, such that they are subject to the same liability rules); *see also Primm v. Dep't of Hum. Servs.*, No. 16-6837, 2017 WL 10646487, at *4 (6th Cir. Aug. 17, 2017) (affirming dismissal of employment discrimination claim filed against individuals). Accordingly, while Taylor can assert Title VII and ADEA claims against her employer, FHC, such

43

claims cannot lie against FHC employees. Similarly, there is generally "no individual liability . . . for employees or supervisors under the KCRA and similar schemes." *Fugate v. Babcock & Wilcox Conversion Servs.*, LLC, No. 5:14-CV-00172-TBR, 2015 WL 1758063, at *5 (W.D. Ky. Apr. 17, 2015). "Individual liability under the KCRA arises only under KRS 344.280(1), the Act's anti-retaliation provision." *Id.* The individual FHC employees therefore cannot be held liable under the KCRA. To the extent Taylor asserts a claim for retaliation under KRS 344.280(1), the Court discusses this below in conjunction with Count IX.

To the extent Taylor asserts constitutional claims against the FHC employees, those claims likewise fail because Taylor does not adequately allege that they acted under color of state law. "Typically, liability under § 1983 lies only if the defendant is a government entity.*" Inner City Contracting, LLC v. Charter Twp. of Northville, Michigan*, 87 F.4th 743, 757 (6th Cir. 2023) (citing *Flagg Bros. v. Brooks*, 436 U.S. 149, 156 (1978)). To bring a § 1983 claim against a private actor, Taylor must show that the FHC employees' actions "so approximate state action that they may be fairly attributed to the state." *Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000). Taylor simply makes the conclusory statement that the FHC employees were "acting under color of law," but she does not allege that they worked for a government entity. [DE 26 at 358–60]. To the extent Taylor argues that FHC and its employees should be treated as state actors by virtue of FHC's status as an FQHC that receives federal funds, the law is clear that "private hospitals operating as not-for-profit entities . . . and receiving public funds through federal welfare programs are not thereby converted into state actors within the meaning of Section 1983." *Jeung v. McKrow*, 264 F. Supp. 2d 557, 571 (E.D. Mich. 2003); *Crowder v. Conlan*, 740 F.2d 447, 450 (6th Cir. 1984) (finding that hospital that "derive[d] a considerable percentage of its revenues from governmental funding" did not become a state actor merely by virtue of government funding).

44

Moreover, even if FHC is government facility,[6] that does not mean that every action taken by its employees becomes action taken under "color of state law." *Place v. Shepherd*, 446 F.2d 1239, 1245 (6th Cir. 1971) ("We will not hold that anything done in the performance of the duties of an employee, supervisory or otherwise, of a hospital becomes action under color of state law merely because the employer is a hospital owned and operated by a municipal corporation."). That is, Taylor must not only allege that the FHC employees were state actors, but that their specific actions were "made possible only because the wrongdoer is clothed with the authority of state law." *West*, 487 U.S. at 49 (internal quotation marks omitted) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941). Only if the FHC employees conduct occurred "in the course of performing an actual or apparent duty of [their] office" would § 1983 be implicated, and Taylor has not alleged that here. *See Waters*, 242 F.3d at 359.

Even if Taylor did adequately allege that the FHC employees were acting under color of state law, she must also "allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008). This does not require that she "identify the unconstitutional conduct to any heightened standard," but "for a plaintiff who alleges unconstitutional conduct by multiple defendants to pass the *Iqbal/Twombly* hurdle, the plaintiff must identify 'with particularity' what each defendant allegedly did in connection with that unconstitutional conduct." *Childress v. City of Cincinnati, Ohio*, 765 F. Supp. 3d 662, 689 (S.D. Ohio 2025). Taylor fails to do so. The only FHC employees she even mentions under Count III are Davis and Fulkerson, so she does not identify any unconstitutional conduct by Green, Cox, or Egbert. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) ("Merely listing names in the caption of the complaint and alleging

---

[6] The Court does not decide at this time whether FHC qualifies as a "state actor" for purposes of § 1983 liability. FHC has answered Taylor's complaint and is not a party to this motion to dismiss.

45

constitutional violations in the body of the complaint is not enough to sustain recovery under § 1983."). Finally, Taylor alleges that her employment was terminated by FHC, not by Davis or Fulkerson. Thus, to the extent she argues that her rights were violated because she was terminated due to her race and age, that violation is only attributable to FHC.

As discussed in more detail below under Count IX, KRS 216B.165 also cannot serve as a basis for liability for the FHC employees because it does not provide for individual liability. *See Hunter v. Corizon Health, Inc.*, No. CV 5:21-066-DCR, 2021 WL 2002438, at *4–5 (E.D. Ky. May 18, 2021).

For these reasons, the Court dismisses Count III with respect to the FHC employees.

### 3.  Count IV – Civil Conspiracy

The FHC employees argue that Taylor's civil conspiracy claim must be dismissed because she fails to allege an underlying tort. [DE 41 at 518]. As discussed in the context of CHC's motion to dismiss, the Court understands the amended complaint as seeking to recover for tortious interference with a contract.

Taylor does not allege tortious interference with a contract as an independent cause of action, so it is not clear that she can even use this as the basis for her civil conspiracy claim. *See Stonestreet Farm*, 2010 WL 2696278, at *13 (holding that plaintiff could not base its civil conspiracy claim on aiding and abetting a breach of fiduciary duty when it never asserted that claim in the complaint); *SHM, 2601, LLC v. Bentley*, No. 2022-CA-0441-MR, 2023 WL 2718972, at *4 (Ky. App. Mar. 31, 2023) ("Since the circuit court properly dismissed the other causes of action made by the Appellants, the claim of civil conspiracy has no underlying tort to be based upon and cannot survive.").

Even if Taylor could base her civil conspiracy claim on this underlying tort, she fails to allege specific conduct by each FHC employee that amounts to intentional interference with a contract. As explained in regard to the CHC motion to dismiss, Taylor lists numerous allegations without naming specific Defendants and without alleging that the conduct was intended to cause a breach of contract. As a result, the Court will likewise dismiss Taylor's civil conspiracy claim as to the FHC employees.

### 4. Count V – IIED

The FHC employees maintain that Taylor's IIED claim must be dismissed because she fails to allege either "outrageous and intolerable" conduct or severe emotional distress. [DE 41 at 512–14]. As with the other claims, Taylor's only response is that she addressed these concerns in her proposed second amended complaint. [DE 26 at 630].

To state a claim for IIED, a plaintiff must show: (1) intentional or reckless conduct; (2) that is "outrageous and intolerable in that it offends against the generally accepted standards of decency and morality"; (3) that is causally connected to the plaintiff's emotional distress; and (4) that the emotional distress is severe. *Humana*, 796 S.W.2d at 2–3. For the reasons already stated in the Court's analysis of Taylor's motion to file a second amended complaint, Taylor fails to establish "outrageous and intolerable" conduct. That is, the specific allegations underlying her claims of "pranking," "stalking," and "imprisonment" are innocuous and explained through innocent motives. The conduct Taylor alleges simply does not rise to the level required for IIED. *See Craft v. Rice*, 671 S.W.2d 247, 250–51 (Ky. 1984) (defining outrageous conduct as "a deviation from all reasonable bounds of decency [that] is utterly intolerable in a civilized community").

47

For these reasons, as well as those discussed under Taylor's motion to file a second amended complaint, the Court grants the FHC employees' motion to dismiss with respect to Count V.

5. *Count VII – Breach of the Covenant of Good Faith and Fair Dealing*

The FHC employees argue that Count VII must be dismissed because Taylor fails to allege the existence of a contract between herself and the FHC employees. [DE 41 at 517]. As with her other claims, Taylor fails to address this argument.

In the absence of a contract, "there can be no breach of the duty of good faith and fair dealing." *Bisig*, 2018 WL 1476679, at *6; *see also Hackney v. Vascular Sols., Inc.*, No. 3:12-CV-00170-CRS, 2018 WL 2970767, at *2 (W.D. Ky. June 13, 2018) ("Breach of [the] covenant can also serve as the basis of a tort claim, but only where the contract at issue was entered into by parties with some 'special relationship' 'not found in ordinary commercial settings.'" (quoting *Ennes v. H & R Block East. Tax Servs., Inc.*, 2002 WL 226345, *2 (W.D. Ky. Jan. 11, 2002))). While Taylor alleges that she and FHC entered into an employment contract, she does not allege the same with respect to any FHC employees. Without this allegation, Taylor cannot state a plausible claim for breach of the covenant of good faith and fair dealing. The Court therefore dismisses Count VII with respect to the FHC employees.

6. *Count VIII – Workplace Harassment*

Under Count VIII for workplace harassment, Taylor alleges that she was subjected to an "intimidating, hostile, and offensive work environment" due to her race and age. [DE 26 at 389]. She states that her "non-African American co-workers began to treat her coldly, [and] made disparaging comments in [her] patients' electronic health records about her job performance[.]"

48

[*Id.* at 389–90]. Taylor bases this claim on Title VII, 42 U.S.C. § 2000e et seq.; the ADEA; and the KCRA. [*Id.* at 390].

Once again, Title VII, ADEA, and the KCRA cannot serve as bases for liability for the individual FHC employees. While Taylor may properly assert this claim against her employer, FHC, her workplace harassment claim must be dismissed to the extent she asserts it against the employees in their individual capacities. The Court therefore dismisses Count VIII as to the FHC employees.

### 7. Count IX – Retaliation

The amended complaint asserts a claim for retaliation against all the FHC employees. [DE 26 at 390]. Taylor alleges that she reported discrimination, harassment, false reporting in patient's electronic health records, and violations of patients' rights to privacy, after which her boss denied her training opportunities, required her to complete a performance evaluation, and FHC ultimately suspended and terminated her. [*Id.* at 391]. The FHC employees argue that this cause of action fails because the statutes Taylor relies on do not provide for individual liability. [DE 41 at 510]. Moreover, to the extent Taylor asserts a constitutional violation, they maintain that the FHC employees are not state actors.

Contrary to the FHC employees' argument, "[t]he Kentucky retaliation statute plainly permits the imposition of liability on individuals." *Morris v. Oldham Cnty. Fiscal Ct.*, 201 F.3d 784, 794 (6th Cir. 2000); *see also Brooks v. Lexington-Fayette Urb. Cnty. Hous. Auth.*, 132 S.W.3d 790, 808 (Ky. 2004). KRS 344.280(1) makes it unlawful for one or more persons "[t]o retaliate or discriminate in any manner against a person because he has opposed a practice declared unlawful by this chapter, or because he has made a charge, filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this chapter." Ky.

49

Rev. Stat. § 344.280(1). To prevail on a claim of retaliation under the KCRA, a plaintiff must show that: (1) she engaged in a protected activity; (2) her employer knew that she did so; (3) her employer subsequently took an adverse action against her; (4) the adverse action was causally related to the protected activity. *Queen v. City of Bowling Green*, No. 1:16-CV-00131, 2018 WL 3520132, at *5 (W.D. Ky. July 20, 2018), *aff'd*, 956 F.3d 893 (6th Cir. 2020); *Fugate*, 2015 WL 1758063, at *5. Opposing a practice by an employer that is unlawful under the KCRA constitutes a "protected activity." *See Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 578 (6th Cir.2000).

While many of Taylor's specific allegations are dispersed randomly throughout the amended complaint and are therefore difficult to pinpoint, she does clearly allege that she reported concerns about "false reporting in patients' electronic health records" and patient privacy and confidentiality issues to Fulkerson. [DE 26 at 369]. She alleges that Fulkerson then "became aggressive, punitive and hostile toward Taylor" and attempted to cover up the infractions. [*Id.* at 370]. She also alleges that she reported "patients' abuse" and "unethical concerns associated with FHCs chief executive officer" to the Kentucky Board of Social Work in accordance with mandatory reporting laws, after which, Davis "insisted Taylor should have kept her mouth shut[.]" [*Id.* at 370]. She elsewhere alleges that "Egbert threatened and intimidated" her, and when she reported this incident to Fulkerson, Fulkerson suspended her. [*Id.* at 380]. Finally, Taylor alleges that she experienced discriminatory conduct and harassment and reported this conduct to human resources and Fulkerson, after which "the work environment had become unbearable through emails attacks and denial of a performance evaluation after ninety (90) days of employment." [*Id.* at 390–91]. Taylor does not make any specific allegations of retaliation with respect to the other FHC employees—Egbert, Cox, or Green.

Taylor alleges that she engaged in protected activity: reporting discriminatory conduct to human resources. She also alleges that Fulkerson had knowledge that she reported this conduct and that Taylor was then subjected to adverse action—i.e., "email attacks and denial of a performance evaluation." [*Id.* at 390]. Finally, by alleging that she faced this adverse action directly after reporting discriminatory conduct, she adequately alleges that the adverse action was causally related to the protected activity. *See Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525–26 (6th Cir. 2008) (explaining that "close temporal proximity" between the protected activity and the adverse action can serve as evidence of a causal connection between the two). With respect to Fulkerson, Taylor has thus alleged a plausible claim for relief under KRS 344.280.

Regarding Davis, Taylor alleges that she reported patient care and ethical issues in accordance with mandatory reporting laws, and that Davis retaliated against her for making such reports. These allegations cannot serve as the basis for a claim under KRS 344.280 because Taylor's reports do not constitute "protected activity." That is, her reports did not oppose an unlawful practice under the KCRA. The KCRA generally prohibits discrimination in employment based on race, color, religion, national origin, sex, age (over forty), and disability. *See* KRS 344.040. Taylor's reports about "false reporting" in patient records does not relate to discriminatory employment practices by FHC or the FHC employees. Rather, Taylor's claim that she was subject to retaliation for reporting issues with patient safety is more appropriately based in KRS 216B.165, which "imposes a duty upon any employee or agent of a healthcare facility to report concerns regarding patient care and safety to the healthcare facility." *Hughes v. Norton Healthcare, Inc.*, No. 2019-CA-0222-MR, 2020 WL 7295190, at *7 (Ky. App. Dec. 11, 2020). The statute also prohibits healthcare facilities from retaliating against an employee who in good faith makes such a report. KRS 216B.165(3). However, much like Title VII and the KCRA, KRS

51

216B.165 does not provide for individual liability. *See Hunter*, 2021 WL 2002438, at \*4–5. Rather, it provides a cause of action only against healthcare facilities; in this case, FHC. *See id.* As a result, Taylor cannot rely on KRS 216B.165 to impose liability on the individual FHC employees, and her claim against Davis fails.

Finally, as discussed above, to the extent Taylor asserts a claim for retaliation under § 1983, that claim fails because she does not plausibly allege that the FHC employees acted under color of state law.

Accordingly, to the extent Taylor asserts a retaliation claim against Defendant Fulkerson under KRS 344.280, her amended complaint survives a motion to dismiss. The Court therefore grants the FHC employees' motion to dismiss Count IX as to Defendants Davis, Egbert, Cox, and Green, and denies the motion as to Defendant Fulkerson.

\* \* \*

For the reasons above, the Court **GRANTS** the FHC employees' motion to dismiss as to Counts I, II, III, IV, V, VII, and VII. As to Count IX, the Court **DENIES** the motion to dismiss with respect to Fulkerson and **GRANTS** the motion to dismiss with respect to all other FHC employees.

### V.    MOTION FOR LEAVE TO SEAL AND MOTION FOR EXEMPTION FROM PACER USER FEE [DE 23; DE 24]

Taylor moves for an exemption from the PACER user fee [DE 24] and moves to seal the motion for an exemption [DE 23].

A. Motion to Seal [DE 23]

Under Local Rule 5.6(c), a party seeking to file a sealed document must file a motion stating "why the sealing is required" and establishing "that the document sought to be filed under seal is entitled to protection from public disclosure." It is well-established that a "strong

52

presumption" exists in favor of keeping court records open to the public. *See, e.g.*, *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1176–79 (6th Cir. 1983). The party seeking to seal records bears the burden of overcoming this presumption, and "[o]nly the most compelling reasons can justify non-disclosure of judicial records." *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016) (quoting *In re Knoxville News-Sentinel Co.*, 723 F.2d 470, 476 (6th Cir. 1983)). To meet this "heavy" burden, the party must show "(1) a compelling interest in sealing the records; (2) that the interests in sealing outweigh the public's right of access; and (3) that the proposed seal is narrowly-tailored." *Schnatter v. 247 Grp.*, LLC, No. 3:20-CV-00003, 2024 WL 3165317, at *1 (W.D. Ky. June 25, 2024) (citing *Shane Grp.*, 825 F.3d at 305). Taylor has made no such showing here. She merely requests that the Court seal her motion for an exemption "due to the confidentiality of personal information and accounts outside of public interest." [DE 23 at 324]. Without more, Taylor fails to overcome the strong presumption favor of keeping court records open to the public.

The Court therefore **DENIES** Taylor's motion to seal.

B.  Motion for PACER Fee Exemption

"The Judicial Conference of the United States has established fees for access to information in PACER." *Stinson v. Fowlkes*, No. 2:22-cv-02694, 2023 WL 3938880, at *8 (W.D. Tenn. June 9, 2023); *see also* 28 U.S.C. § 1914 note (Judicial Conference Schedule of Fees, Electronic Public Access Fee Schedule); U.S. Courts, Electronic Public Access Fee Schedule, https://www.uscourts.gov/court-programs/fees/electronic-public-access-fee-schedule (last visited May 10, 2026). Pursuant to the U.S. Courts' fee schedule, PACER users pay ten cents per page to download documents, with a maximum charge of three dollars per document. U.S. Courts, *Electronic Public Access Fee Schedule*. Parties in a case, including *pro se* litigants, receive one

free electronic copy of all documents filed electronically. *Id.* Courts are authorized to "exempt certain persons or classes of persons from payment of the user access fee[,]" including "indigents," if those "seeking an exemption have demonstrated that an exemption is necessary in order to avoid unreasonable burdens and to promote public access to information[.]" *Id.* To be eligible for an exemption, the requesting party must demonstrate that an exemption is "necessary in order to avoid unreasonable burdens and to promote public access to information[.]" *Id.*

Taylor has not shown that a PACER fee exemption is necessary to avoid unreasonable burdens. She submitted an affidavit stating that she is indigent but otherwise provides no evidence of her indigency. [DE 24-1]. She "request[s] a PACER fee credit for $88.80," but she attaches no documentation establishing this outstanding balance. *See U.S.A. v. Gartenlaub*, 2025 WL 1837743, at *4 (C.D. Cal. July 3, 2025) (rejecting request for exemption when defendant attached no documentation showing his outstanding PACER balance). Nor does she show that her balance is related to this case or how she accrued this balance. *See Stinson v. Fowlkes*, No. 2:22-CV-02694, 2023 WL 3938880, at *9 (W.D. Tenn. June 9, 2023) (denying request for PACER fee exemption when plaintiff failed to show that his balance was related to the case or how he accrued the balance). In addition, Taylor has not moved to proceed *in forma pauperis* in this case, and she paid the $405 filing fee, suggesting that she has been able to afford other Court costs. [DE 1]. "PACER fee exemptions are the exception, not the rule." *Id.* (citing *James v. City of Omaha*, No. 8:07-CV-121, 2007 WL 1725619, at *1 (D. Neb. June 13, 2007)). Without more supporting documentation, Taylor has failed to show a need for a PACER fee exemption.

As a result, the Court **DENIES WITHOUT PREJUDICE** Taylor's motion for a fee exemption.

## VI.    CONCLUSION

For the reasons above, the Court **ORDERS** as follows:

(1) Taylor's motion for leave to file a second amended complaint [DE 45] is **DENIED**.

(2) Taylor's motion for leave to file a sur-reply [DE 50] is **DENIED**.

(3) DPHW's motion to dismiss [DE 32] is **GRANTED**.

(4) The CHC Defendants' motion to dismiss [DE 33] is **GRANTED**.

(5) The Board of Health's motion to dismiss [DE 40] is **DENIED**.

(6) The FHC employees' motion to dismiss [DE 41] is **GRANTED IN PART** and **DENIED IN PART**.

(7) Taylor's motion to seal [DE 23] is **DENIED**.

(8) Taylor's motion for an exemption from the PACER user fee [DE 24] is **DENIED WITHOUT PREJUDICE**.

Rebecca Grady Jennings, District Judge
United States District Court

May 27, 2026

55